THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


WILLIAM E. BROWN,

                    Plaintiff,

vs.                                    Case No. 19-3152-SAC

DEBRA LUNDRY, et al.,

                    Defendants.

## O R D E R

Plaintiff has filed a <u>pro se</u> complaint pursuant to 42 U.S.C. § 1983 with supplemental state law claims.  He has been a prisoner at the Sedgwick County Jail and is now in the Kansas Department of Corrections system at the Hutchinson Correctional Facility.  This case is before the court to screen plaintiff's complaint pursuant to 28 U.S.C. § 1915A.

## I. <u>Pro se standards</u>

"A <u>pro se</u> litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991). A <u>pro se</u> litigant, however, is not relieved from following the same rules of procedure as any other litigant. See <u>Green v. Dorrell</u>, 969 F.2d 915, 917 (10th Cir. 1992).  A district court should not "assume the role of advocate for the <u>pro se</u> litigant." <u>Hall</u>, <u>supra</u>. Nor is the Court to "supply additional factual

1

allegations to round out a plaintiff's complaint." <u>Whitney v. State</u> <u>of New Mexico</u>, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

II. <u>Screening and § 1983 standards</u>

Title 28 United State Code Section 1915A requires the Court to review cases filed by prisoners seeking redress from a governmental entity or employee to determine whether the complaint is frivolous, malicious or fails to state a claim upon which relief may be granted. When deciding whether plaintiff's complaint "fails to state a claim upon which relief may be granted," the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)(quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

<u>Id.</u> The Court accepts the plaintiff's well-pled factual allegations as true and views them in the light most favorable to the plaintiff. <u>United States v. Smith</u>, 561 F.3d 1090, 1098 (10th Cir. 2009).

To state a claim under § 1983, a plaintiff must allege 1) the deprivation of a federal protected right by 2) a person or entity

acting under color of state law.  Schaffer v. Salt Lake City Corp., 814 F.3d 1151, 1155 (10th Cir. 2016).  The Court will not accept broad allegations which lack sufficient detail to give fair notice of what plaintiff's claims are.  Section 1983 plaintiffs must "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state."  Robbins v. Oklahoma ex rel. Dep't of Human Servs., 519 F.3d 1242, 1250 (10th Cir. 2008).  This means plaintiffs "must do more than show that their rights were violated or that defendants, as a collective and undifferentiated whole, were responsible for those violations."  Pahls v. Thomas, 718 F.3d 1210, 1228 (10th Cir. 2013).  Plaintiffs "must identify specific actions taken by particular defendants, or specific policies over which particular defendants possessed supervisory responsibility, that violated their clearly established constitutional rights."  Id.

III. The complaint

   A. Factual allegations

   Plaintiff's complaint was filed August 19, 2019.  The complaint names over 30 defendants.  Plaintiff's allegations mostly, but not entirely, concern medical care for various health problems he has suffered during his incarceration at multiple facilities.

Plaintiff alleges that he has been diagnosed with lung problems such as sarcoidosis, chronic bronchitis and COPD. He asserts that he has suffered from breathing difficulties, chest discomfort, coughing, shortness of breath and fatigue. Plaintiff's allegations start on October 13, 2016 at the Sedgwick County Jail (SCJ). While at SCJ, plaintiff was sent to defendant Dr. Son V. Truong, a pulmonologist at St. Francis Hospital. Plaintiff visited Dr. Truong at least four times between October 13, 2016 and September 6, 2017. Once plaintiff was sent to Via Christi clinic. Some of these visits were for CT scans and plaintiff asserts that the visits were futile because his old CT scans were not transported with him for comparison. Plaintiff alleges that during this time he was denied treatment for his breathing difficulties at SCJ. Plaintiff alleges generally that "excessive delay" worsened plaintiff's lung condition throughout the year and that this was caused by defendants Jeff Easter, Dr. Harold Stopp and Sarah Wilson.

On September 25, 2017, plaintiff was moved to the El Dorado Correctional Facility (EDCF). He alleges that when he arrived his inhaler and "optic chamber diamond static valve" were taken by defendant Jackie Warner. Doc. No. 1, ¶ 50. A replacement inhaler was not delivered for 9½ days. The new inhaler was ordered by defendant William Wade and approved by defendants Dr. Gordon

Harrod, Dr. Paul Corbier and Dr. Truong.[1] During this time plaintiff was on 24-hour lockdown in the residential diagnostic unit and was not given breathing treatment. Plaintiff wrote a grievance to the Warden but received no response. During October 2017, plaintiff was sent to an outside hospital for a CT scan. Plaintiff claims no meaningful care was delivered.

On October 23, 2017, plaintiff was transferred to Winfield Correctional Facility (WCF). Plaintiff complained of migraine headaches, shortness of breath, fatigue and chronic bronchitis. Plaintiff's inhaler was reduced in strength (from 232mcg/14mcg to 113mcg/14mcg) by defendants Jennifer Clements with PharmaCorr Inc., Dr. Baseer Sayeed, Regina Stroble, Pamela Matthews and Dr. Corbier. On December 3, 2017, plaintiff complained of breathing difficulties and was denied treatment by defendant Heidi Robinson. On January 11, 2018 plaintiff went back to Dr. Truong but Dr. Truong did not receive the medical records he needed, which angered Dr. Truong. He told plaintiff that he had COPD and chronic bronchitis. When plaintiff complained of migraine headaches, Dr. Truong told plaintiff he was not plaintiff's medical provider.

Twelves times in January through March 2018, plaintiff saw defendant Dr. Sayeed for breathing issues, migraine headaches and medication issues. Plaintiff claims that Dr. Sayeed and defendants

[1] The complaint refers to Dr. Harrod in different ways, e.g. "Dr. Harrod Gordan." The court believes the correct name is Dr. Gordon Harrod.

Stroble and Matthews prevented plaintiff from obtaining an outpatient visit.

On February 13, 2018, plaintiff was diagnosed with a hernia, but given no treatment even though he was in serious pain. On April 18, 2018, plaintiff saw defendant Matthews for his hernia, migraines and breathing difficulties, but received no treatment. On April 26, 2018, plaintiff was told by Dr. Sayeed, after reviewing a CT scan, that plaintiff's sarcoidosis was in remission and there was no need for further treatment. They also discussed plaintiff's hernia and migraines.

Plaintiff was dropped as Dr. Truong's patient on June 1, 2018. Plaintiff saw Dr. Sayeed on June 14, 2018, but was denied a "step up in therapy" after complaining of migraines, hernia and breathing difficulties.

Plaintiff alleges that he wrote hundreds of agencies to request help in suing defendant Corizon and the Kansas Department of Corrections. He also wrote numerous grievances. He claims that his letters were opened by defendant Barbara Wheeler. He also claims that in retaliation for his letters and grievances, on June 25, 2018, he was moved back to EDCF by defendants Electra Knowles, Page Coleman and Emma Connover.

In August 2018, plaintiff received treatments for chronic bronchitis. Plaintiff claims that on September 21, 2018, after he

was denied surgery for his hernia, he was given a bottom bunk and weight restriction, but was in pain and needed pain medication.

In March 2019, plaintiff received a new inhaler. He states that it was the same dosage, although a new pulmonologist had recommended a changed dosage. In April plaintiff received an inhaler with the dosage recommended by the new pulmonologist. On March 5, 2019, plaintiff received a hernia belt. Plaintiff suffered pain from his hernia, but he did not receive surgery.

In April 2019, plaintiff was transferred to Hutchinson Correctional Facility (HCF). His breathing treatment medication was changed by defendant Dr. Monir to "Duo Neb" which interferes with plaintiff's other medication. The medication was changed back on May 1, 2019.

Starting in July 2018 and continuing into 2019 plaintiff had "skin abnormalities." He received Ketaconazole cream in August 2018. He was seen by a doctor in September and October 2018. A biopsy was performed on October 17, 2018 which showed results consistent with sarcoidosis. A dermatologist visit was recommended but denied by defendant Dr. Dorsey. In June 2019 plaintiff received Ketaconozole tablets for ten days.

B. Legal claims

Plaintiff's claims for relief are listed on pp. 15-18 of his complaint. Plaintiff has not numbered the claims, but the court will label and enumerate the claims as follows:

1. <u>Eighth Amendment – excessive delay</u>

2. <u>Eighth Amendment – inhaler delay</u>

3. <u>Eighth Amendment – reduced inhaler dosage</u>

4. <u>Retaliation</u>

5. <u>Medical malpractice – chronic care</u>

6. <u>Eighth Amendment – hernia</u>

7. <u>Medical malpractice – inhaler dosage and delay</u>

8. <u>Eighth Amendment – delay in diagnosis</u>

9. <u>Eighth Amendment – migraines</u>

10. <u>Equal protection – failure to do hernia surgery</u>

11. <u>Eight Amendment – bronchitis treatment</u>

12. <u>Eighth Amendment – bronchitis and COPD treatment</u>

13. <u>Eighth Amendment – sarcoidosis of the skin</u>

14. <u>Eighth Amendment – grievance procedure</u>

15. <u>Relief requested</u>

Plaintiff seeks actual damages, punitive damages, injunctive relief and declaratory relief.

IV. <u>Discussion</u>

A. <u>Dr. Truong</u>

Plaintiff attempts to bring two § 1983 claims against Dr. Truong.  See Claims ## 8 and 12 at Doc. No. 1, ¶¶ 139 and 143. Plaintiff, however, does not allege facts indicating that Dr. Truong acted under color of state law.  Plaintiff states that Dr. Truong is a pulmonologist at St. Francis Hospital.  He does not

8

allege that Dr. Truong contracted with the State of Kansas, as opposed to a private corporation, to provide medical services to plaintiff. Generally, private doctors and private hospitals do not act under color of state law for purposes of § 1983. See Wittner v. Banner Health, 720 F.3d 770, 780-81 (10th Cir. 2013); Haggins v. Alabama Dept. of Corrections, 2018 WL 1938310 *3 (N.D.Ala. 1/30/2018); Gilliland v. Manord, 2017 WL 3124333 *2 (N.D.Ala. 7/5/2017); Lipps v. Sutter Amador Hospital, 2017 WL 2081598 *3 (E.D.Cal. 5/15/2017); Callahan v. Southwestern Medical Center, 2005 WL 1238770 *4-5 (W.D.Okla. 4/29/2005). Therefore, the court finds that plaintiff has failed to state a § 1983 claim against Dr. Truong.

B. Personal participation

A plaintiff may not seek to impose liability upon a defendant merely because of that person's supervisory position or because he or she rejected a grievance or ignored a complaint. Porro v. Barnes, 624 F.3d 1322, 1327 (10th Cir. 2010); Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009). Individual liability for a § 1983 violation requires personal involvement in the alleged constitutional violation. Schneider v. City of Grand Junction Police Dept., 717 F.3d 760, 768 (10th Cir. 2013).

The court has carefully considered plaintiff's allegations. The court finds that the plaintiff has not alleged facts, as opposed to conclusions, showing that the following individual

9

defendants personally participated in conduct causing a violation of plaintiff's constitutional rights: Jeff Easter, Charles Simmons, Doug Burris, Roger Werholtz, Daniel Schnurr, Sam Cline, Viola Riggins, David Tatarsky, and Paul Snyder.

To properly allege the liability of these supervisor defendants, plaintiff must describe an affirmative link between them and the alleged constitutional violation. <u>Dodds v. Richardson</u>, 614 F.3d 1185, 1195 (10th Cir. 2010). This requires allegations of: a) a personal involvement in the violation; b) a sufficient causal connection between the supervisor's involvement and the constitutional violation; and c) a culpable state of mind. <u>Id.</u> "Personal involvement" can be alleged by stating that: 1) the supervisor personally participated in the alleged violation; 2) the supervisor exercised control or direction over the alleged illegal acts, or the supervisor's failure to supervise caused the alleged illegal acts; 3) the supervisor knew of the violation and acquiesced in its continuance; or 4) the supervisor promulgated, created, implemented or utilized a policy that caused the alleged deprivation of constitutional rights. <u>Id.</u> A "causal connection" is alleged by claiming that a supervisor defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive plaintiff of her constitutional rights. <u>Id.</u> at 1195-96.

C. <u>Corporate liability</u>

Plaintiff has named Corizon Health, Correct Care Solutions and PharmaCorr as defendants. See Claims ## 2 and 14 at ¶¶ 133 and 145 of Doc. No. 1. Claim #2, which names PharmaCorr as a defendant, concerns the provision of an inhaler for plaintiff. Claim #14 involves grievance procedures. For purposes of this discussion, the court shall assume that these private corporations are acting under color of state law.

A private corporation, treated as acting under color of state law under § 1983, may not be held liable based upon respondeat superior – that is, solely because it employs someone who violated the Constitution. See Rascon v. Douglas, 718 Fed.Appx. 587, 589–90 (10th Cir. 2017); Spurlock v. Townes, 661 Fed.Appx. 536, 545 (10th Cir. 2016); Green v Denning, 465 Fed.Appx. 804, 806 (10th Cir. 3/9/2012); Livingston v. Correct Care Solutions, 2008 WL 1808340 *1-2 (D.Kan. 4/17/2008). Plaintiff must allege facts showing a policy or a custom of the corporate defendants named in the complaint that caused his injury. See Wabuyabo v. Correct Care Solutions, 723 Fed.Appx. 642, 643 (10th Cir.) cert. denied, 139 S.Ct. 427 (2018).

Plaintiff has failed to allege facts plausibly showing that the policies or common practices of the corporate defendants regarding the provision of medical devices, like inhalers, or the handling of grievances caused plaintiff injury through the

11

deliberate indifference to plaintiff's significant medical needs.
Plaintiff has only made broad and conclusory allegations that the
corporate defendants have policies intended to save money by
limiting outside referrals, medical tests and procedures, and
prescribed medication.  Plaintiff has not alleged facts showing
that a treatment he needed for a serious medical problem was denied
because of a cost-saving policy of one of the corporate defendants.
Therefore, plaintiff's claims against the corporate defendants are
subject to dismissal.

    D. <u>Eighth Amendment claims</u>

       1. <u>Standards</u>

    The Supreme Court has held that "deliberate indifference to
serious medical needs of prisoners" constitutes a violation of the
Eighth Amendment.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976).
There is an objective component and a subjective component to the
test for deliberate indifference.  <u>Farmer v. Brennan</u>, 511 U.S.
825, 834 (1994).  A plaintiff must show that objectively he was
deprived of a sufficiently serious medical need.  <u>Id.</u>  A plaintiff
must also show that the defendant subjectively knew of and
disregarded an excessive risk to the plaintiff's health or safety.
<u>Id.</u> at 837.

    A medical need is "'sufficiently serious if it is one that
has been diagnosed by a physician as mandating treatment or one
that is so obvious that even a lay person would easily recognize

12

the necessity for a doctor's attention.'" Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005)(quoting Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000)). A defendant knows of and disregards an excessive risk to a prisoner's health when he is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and he actually draws that inference. Farmer, 511 U.S. at 837. Negligence in diagnosis or treatment and medical malpractice do not rise to the level of the Eighth Amendment violation. Green v. Branson, 108 F.3d 1296, 1303 (10th Cir. 1997). It is "obduracy and wantonness, not inadvertence or error in good faith" that characterize deliberate indifference. Whitley v. Albers, 475 U.S. 312, 319 (1986). A plaintiff's disagreement with a course of treatment, such as whether to consult a specialist or undertake additional testing, is not sufficient to state a constitutional claim under the Eighth Amendment. Gee v. Pacheco, 627 F.3d 1178, 1192 (10th Cir. 2010); Self v. Crum, 439 F.3d 1227, 1232 (10th Cir. 2006); Perkins v. Kansas Dept. of Corrections, 165 F.3d 803, 811 (10th Cir. 1999). In other words, "the subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment." Self, 439 F.3d at 1232; see, e.g., Ledoux v. Davies, 961 F.2d 1536, 1537 (10th Cir. 1992) (noting that types of medication prescribed and referrals to specialists are generally matters of medical judgment).

Furthermore, "a delay in medical care 'only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm.'" Mata, 427 F.3d at 751 (quoting Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001)). "The substantial harm requirement can 'be satisfied by lifelong handicap, permanent loss or considerable pain.'" Id. (quoting Garrett v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001)).

### 2. Claim #1 – excessive delay – ¶ 132

Plaintiff alleges that the actions or omissions of defendant Sarah Wilson, Director of Nursing and Clinic Manager, defendant Dr. Harold Stopp of Correct Care Solutions, and the Sedgwick County Jail excessively delayed the treatment of plaintiff's lung disease and caused it to worsen in violation of the Eighth Amendment. The claim refers to the factual allegations at ¶¶ 31-47 of the complaint. Claim #1 appears centered upon plaintiff's treatment at SCJ. Plaintiff left the jail on September 25, 2017, according to the complaint.

Plaintiff has failed to state a claim for a violation of the Eighth Amendment in this charge for the following reasons. First, the court notes that the limitations period for § 1983 actions arising in Kansas is two years. Jacobs v. Lyon County Detention Center, 371 Fed.Appx. 910, 912 (10th Cir. 3/31/2010)(drawing the period from the personal injury statute of limitations in Kansas in accordance with Wilson v. Garcia, 471 U.S. 261, 269 (1985));

14

Brown v. U.S.D. 501, 465 F.3d 1184, 1188 (10th Cir. 2006)(same).
Plaintiff filed this action on August 19, 2019. Plaintiff's
allegations involve instances where medical records that Dr.
Truong needed for plaintiff's visits on January 13, 2017, February
21, 2017, May 2, 2017 and September 6, 2017 were not delivered.
But, defendant Wilson is only tied by plaintiff's allegations to
the incident on February 21, 2017 and another incident when
plaintiff was sent to the Via Christi clinic at Wesley Hospital on
May 11, 2017. These events occurred outside the two-year
limitation period for § 1983 claims. Plaintiff states that a
transport officer refused to take the appropriate study for Dr.
Truong on September 6, 2017.

As to defendant Dr. Stopp, plaintiff does not make allegations
linking Dr. Stopp to the delays in receiving treatment for his
lung disease. Plaintiff quotes Dr. Stopp as stating that he cannot
cure plaintiff's sarcoidosis. But, plaintiff does not dispute
this statement. Nor does plaintiff state to what extent the delay
in treatment substantially worsened his lung condition or how this
was manifested.

Finally, plaintiff indicates that he had an inhaler when he
was at SCJ. Doc. No. 1, ¶¶ 50 and 52. So, plaintiff did receive
some treatment at the jail. Furthermore, plaintiff visited Dr.
Truong on multiple occasions and was treated by Dr. Truong.
Although plaintiff claims the treatment was not meaningful,

plaintiff alleges that Dr. Truong gave him an inhaler that apparently gave plaintiff relief. These allegations do not describe objective indifference to a serious medical need or subjective indifference by defendant Wilson or defendant Dr. Stopp.

### 3. Claim #2 – inhaler delay – ¶ 133

Plaintiff alleges that the actions or omissions of defendants nurse Jackie Warner, nurse practitioner William Wade, medical provider and physician Dr. Gordon Harrod, former regional medical director Dr. Paul Corbier, nurse Cereasa Patterson, PharmaCorr, Inc. and Jennifer Clements of PharmaCorr, Inc. interfered with the inhaler medication prescribed by Dr. Truong and delayed plaintiff's receipt of the inhaler for 9½ days in violation of the Eighth Amendment. Claim #2 refers to factual allegations at ¶¶ 49-53 of the complaint. The events allegedly occurred while plaintiff was at EDCF.

Plaintiff's factual allegations assert that defendant Wade ordered an inhaler for plaintiff and that the inhaler was approved by Dr. Harrod and Dr. Paul Corbier. These allegations do not describe objective or subjective indifference to a serious medical problem by defendants Wade, Dr. Harrod or Dr. Corbier. Claim #2 states that defendant Warner took plaintiff's inhaler and optic chamber diamond static valve when he arrived from SCJ and placed plaintiff on a different inhaler which was on back order and not

in stock. There are no facts stated indicating that defendant Warner was aware that the inhaler was not in stock or how long it might take for delivery. This does not describe objective or subjective indifference to a serious medical problem by defendant Warner.

Claim #2 lists PharmaCorr, Inc. and Jennifer Clements as defendants, but the referenced factual allegations do not mention either defendant. Therefore, Claim #2 does not state a cause of action against them.

### 4. Claim #3 – reduced inhaler dosage – ¶ 134

Plaintiff alleges that defendants Jennifer Clements of PharmaCorr Inc., Dr. Baseer Sayeed at WCF, Regina Stroble the health services administrator at WCF, Pamela Matthews the director of nursing and clinic manager at WCF, and Dr. Paul Corbier the former regional medical director, reduced plaintiff's inhaler dosage for non-medical reasons without an alternate treatment plan causing plaintiff breathing difficulties and aggravating plaintiff's lung injury in violation of the Eighth Amendment. Claim #3 makes reference to the factual allegations at ¶¶ 59-62 of the complaint. Plaintiff was at WCF when these alleged events happened.

The factual allegations to which plaintiff refers allege that on November 20, 2017 defendants Clements, Dr. Sayeed, Stroble, Matthews and Dr. Corbier acted to reduce the dosage on plaintiff's

inhaler "completely ignoring the harm this would cause the plaintiff and without any alternative treatment plan." Doc. No. 1, ¶ 59. Plaintiff alleges that this was because the inhaler was on back order and not in stock until December 19, 2017. Plaintiff does not allege facts indicating that the persons named in Claim #3 acted objectively and subjectively in deliberate indifference to a serious medical need by exercising their judgment as to the dosage administered by plaintiff's inhaler.

### 5. Claim #6 – hernia – ¶ 137

Plaintiff claims that defendants Debra Lundry (health services administrator at HCF), Dr. Monir (medical provider at HCF), Pamela Matthews, Regina Stroble, Dr. Harrod, Lisbeth Lieber (nurse practitioner), and Dr. Barry Lewis Harris (medical officer) did not treat plaintiff for pain from his hernia and denied surgery twice in violation of the Eighth Amendment. Plaintiff refers to the factual allegations at ¶¶ 68, 73, 79, 93-95, 99, and 104-09 of the complaint.

The court has examined the factual allegations plaintiff ties to Claim #6. Those allegations do not describe the specific actions taken by defendants Lundry, Matthews, Stroble, Dr. Harrod, Lieber and Dr. Harris to deny treatment for plaintiff's hernia and the pain associated with it. Therefore, Claim #6 does not state a claim against those defendants.

## 6. Claim #8 – delay in diagnosis - ¶ 139

Plaintiff asserts that defendants Dr. Sayeed, Pamela Matthews, Regina Stroble and Dr. Truong excessively delayed plaintiff's diagnosis in violation of the Eighth Amendment. Claim #8 refers to ¶¶ 55-90 of the complaint. The court's review of these paragraphs finds that plaintiff does not describe the specific actions or decisions taken by the defendants listed in Claim #8 which caused a delay in diagnosis that resulted in substantial harm. Plaintiff's allegations indicate that his diagnosis for breathing issues has not changed substantially from its status prior to the events recounted in ¶¶ 55-90. See ¶¶ 31, 34, 38 and 45.

## 7. Claim #9 – migraines ¶ 140

Plaintiff alleges that defendants Dr. Sayeed, Pamela Matthews and Regina Stroble violated plaintiff's Eighth Amendment rights by refusing to do further testing to diagnose the cause of plaintiff's migraine headaches and only gave plaintiff ibuprofen as treatment. Claim #9 refers to ¶¶ 55 through 130 of the complaint.

Plaintiff's allegations represent a disagreement with the defendants' medical judgment regarding the proper treatment for plaintiff's migraines. This is insufficient to state a claim of an Eighth Amendment violation. See Weldon v. Ramstad-Hvass, 512 Fed.Appx. 783, 795 (10th Cir. 2013); Gee, 627 F.3d at 1192. Plaintiff also fails to describe any specific actions or omissions

of the defendants, particularly Regina Stroble, which state a claim of relief for an Eighth Amendment violation.[2]

### 8. Claim #11 – bronchitis treatment - ¶ 142

Plaintiff asserts that defendants Dr. Sayeed, Dr. Stopp, Regina Stroble, and Pamela Matthews violated plaintiff's Eighth Amendment rights by failing to treat plaintiff's chronic bronchitis with breathing treatments, Mucinex, peak flow monitor test, vitals, stethoscope, and pulmonary function test. Plaintiff references ¶¶ 55-90 of the complaint. These paragraphs, however, fail to describe any specific actions or omissions of the defendants regarding breathing treatments, Mucinex, peak flow monitor tests, pulmonary function tests, stethoscope checks or vitals. Nor do plaintiff's broad allegations describe anything more than a possible disagreement over course of treatment. Therefore, Claim #11 does not state an Eighth Amendment violation against the defendants named in that count.

### 9. Claim #12 – bronchitis and COPD treatment - ¶ 143

Plaintiff makes a claim similar to Claim #11 against defendant Dr. Truong in Claim #12. Plaintiff alleges that Dr. Truong failed to give him breathing treatments and mucus relief with Mucinex. Plaintiff makes reference to ¶¶ 34-78 in the complaint. As already stated, plaintiff has failed to allege facts showing that Dr.

---

[2] As to defendants Dr. Sayeed and Pamela Matthews plaintiff only alleges a lack of treatment or failure to step up therapy.

Truong is a state actor who may be sued under § 1983. Many of plaintiff's visits with Dr. Truong occurred more than two years before plaintiff filed this lawsuit and may not form the basis of a timely § 1983 claim. Also, Dr. Truong prescribed an inhaler for plaintiff and thus, provided treatment for plaintiff's condition. After a review of the complaint, the court concludes that plaintiff does not allege facts showing that Dr. Truong's failure to provide breathing treatments during a visit on January 11, 2018 plausibly describes deliberate indifference to a serious medical need.[3]

### 10. Claim #13 – sarcoidosis of the skin - ¶ 144

In Claim #13 plaintiff alleges that defendants Dr. Harrod, Lisbeth Lieber, Debra Lundry, and Dr. Monir violated plaintiff's Eighth Amendment rights by failing to treat plaintiff for sarcoidosis of the skin. He refers to ¶¶ 111-129 of the complaint.

Plaintiff's allegations fail to state a claim because they do not describe a substantial medical problem. In addition, plaintiff's skin condition did receive treatment in the form of prescription medicine, biopsy, and examinations. Third, plaintiff does not describe any specific actions or omissions by the defendants he names in Claim #13 which would plausibly show deliberate indifference to a serious medical need.

---

[3] The January 11, 2018 visit in the only appointment with Dr. Truong after August 19, 2017.

## 11. Claim #14 – grievance procedure - ¶ 145

Plaintiff alleges that defendants Viola Riggins (former director of health services), Jeff Easter (sheriff of Sedgwick County), David Tatarsky (former director of health services), Page Coleman, Electra Knowles (policy and compliance officer), Correct Care Solutions, Corizon Health, Roger Werholtz (Secretary of Corrections), Regina Stroble, Sam Cline (Warden of EDCF), Daniel Schnurr (Warden of HCF), Charles Simmons (Acting Secretary of Corrections), and Doug Burris (corrections manager) failed to employ the grievance procedure to ensure plaintiff received proper medical treatment in violation of plaintiff's Eighth Amendment rights. Plaintiff refers to ¶¶ 87-89 of the complaint.

Plaintiff's allegations fail to describe what each specific defendant did to deny plaintiff treatment in deliberate indifference to a substantial medical need. The general allegation that several persons failed to employ a grievance procedure to ensure proper medical treatment is not sufficient to make clear exactly who did what to whom. Moreover, "a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by [a] plaintiff, does not establish personal participation [in the violation] under § 1983." Gallagher, 587 F.3d at 1069.

E. <u>Retaliation - ¶ 135</u>

In Claim # 4, plaintiff alleges that he was transferred from WCF to EDCF in retaliation for writing grievances against medical staff. Plaintiff alleges that defendants Page Coleman (unit team supervisor), Barbara Wheeler (mail room clerk), Electra Knowles (mail room supervisor), Regina Stroble, Dr. Baseer Sayeed, and Pamela Matthews are liable for this alleged misconduct. Plaintiff refers to ¶¶ 83-91 of the complaint.

To state a First Amendment retaliation claim, plaintiff must allege: 1) he engaged in constitutionally protected activity; 2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and 3) the defendant's adverse action was substantially motivated as a response to his constitutionally protected activity. _Gray v. Geo Group, Inc._, 727 Fed.Appx. 940, 946 (10th Cir. 3/6/2018)(citing _Mocek v. City of Albuquerque_, 813 F.3d 912, 930 (10th Cir. 2015)). "To make a prisoner's claim of retaliation by a prison official plausible, it must be supported by (1) specific facts about the adverse action taken against the prisoner to make it plausible that the action was not motivated by legitimate grounds and (2) specific facts showing why the particular official would be motivated to improperly harm the prisoner." _Guy v. Lampert_, 748 Fed.Appx. 178, 181 (10th Cir. 2018);

see also <u>Strope v. Cummings</u>, 381 Fed.Appx. 878, 883 (10th Cir. 2010).

Plaintiff's allegations do not state the specific actions the named defendants did to cause plaintiff's transfer. Plaintiff alleges that defendant Wheeler opened plaintiff's mail and "reported the plaintiff to the proper authorities" (¶ 84 and ¶ 87); that defendants Stroble, Knowles and Coleman had meetings (¶ 84); that defendants Stroble and Matthews denied plaintiff medical care (¶ 87); and that defendants Knowles, Coleman and Connover "rolled" or transferred plaintiff to EDCF in retaliation for writing grievances (¶ 89). There are no allegations regarding Dr. Sayeed, Regina Stroble or Pamela Matthews causing a retaliatory transfer.

Also, there are no specific allegations identifying the actions taken by defendants Knowles, Coleman and Connover were substantially motivated to retaliate against plaintiff for writing grievances. Plaintiff simply makes the general claim that defendants Knowles, Coleman and Connover transferred plaintiff and that he was told by a person not named as a defendant that he was transferred because he filed grievances. This is insufficient to state a plausible claim for relief. See <u>Armour v. Universal Protection Services</u>, 724 Fed.Appx. 663, 665 (10th Cir. 2018); <u>Sheratt v. Utah Dept. of Corrections</u>, 545 Fed.Appx. 744, 748 (10th Cir. 2013)

Moreover, assuming plaintiff could proceed with a retaliation claim against defendants Knowles, Coleman and Connover, the claim does not appear sufficiently related to plaintiff's other claims to justify joinder in this case under Fed.R.Civ.P. 20. Plaintiff must show that the right to relief against the defendants arises out of the same transaction, occurrence or series of transactions or occurrences; and that there is a question of law or fact common to all defendants in the action. Absent such a showing, the court may require plaintiff to sever the retaliation claim and bring it as a separate action. See <u>McLemore v. Saline County Sheriff's Office</u>, 2016 WL 3522048 *3-4 (D.Kan. 6/28/2016).

F. <u>Equal protection - ¶ 141</u>

In Claim #10, plaintiff alleges that defendants Dr. Monir and Debra Lundry violated plaintiff's constitutional right to equal protection of the laws by failing to give plaintiff hernia surgery when another inmate at the same institution with a smaller hernia received hernia surgery.

The Equal Protection Clause of the Fourteenth Amendment directs that persons similarly situated should be treated alike. <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985). The challenged disparate treatment must be the result of purposeful discrimination. <u>McCleskey v. Kemp</u>, 481 U.S. 279, 292 (1987) (quoting <u>Whitus v. Georgia</u>, 385 U.S. 545, 550 (1967)). The pleading burden is significant in situations where the government

actors enjoy a range of discretion and may properly base a decision on a myriad of potentially relevant factors. See Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1218-19 (10th Cir. 2011). Here, plaintiff has not alleged facts showing that defendants Dr. Monir and Debra Lundry acted with a discriminatory intent against plaintiff, only that an inmate with a similar condition at the same institution was given a different treatment. The court finds that Claim # 10 fails to state a claim.

G. Medical malpractice - ¶¶ 136 and 138

Plaintiff raises two state law medical malpractice claims against defendants Lisbeth Lieber and Dr. Gordon Harrod. To prove medical malpractice an injured patient must show a breach of the professional duty of care, that the breach caused the patient harm and that he has suffered actual damages. Roesch v. Clarke, 861 F.Supp. 986, 991 (D.Kan. 1994). In Claim #5, plaintiff claims that these two defendants committed medical malpractice by failing to monitor plaintiff "while on Advair" and failing to give plaintiff a chronic care appointment because of a shortage of staff which led to "plaintiff becoming a Diabetic." Doc. No. 1, ¶ 136. Claim #5 refers to ¶ 97 of the complaint which states that plaintiff is on medication that causes "other diseases such [as] Diabetes" and that a single chronic care visit was delayed due to shortness of staff. Plaintiff's allegations fail to plausibly show that the defendants' actions caused plaintiff harm and that

he suffered actual damages. The alleged facts to which Claim #5 refers only assert that plaintiff is on medication which causes diseases such as diabetes and that a chronic care visit was delayed due to a shortage of staff.

In Claim #7, plaintiff alleges that the defendants failed to order the correct dosage for plaintiff's inhaler. Plaintiff refers to ¶¶ 98, 100 and 101 of the complaint. These paragraphs state that "around March 2019" plaintiff was given a new inhaler that was the same dosage as the previous inhaler rather than a new dosage that had been recommended by a Dr. Fletcher, although defendant Lieber said it was the new dosage. Doc. No. 1, ¶ 98. Plaintiff further alleges that on "4-2-19 or 4-12-19" he was given the right dosage after he "relentlessly" complained to a nurse Johnson and a Ms. Wolf. Doc. No. 1, ¶ 100. These allegations do not describe a breach of duty by Dr. Harrod. They also do not describe actual harm and damages suffered by plaintiff as a result of Ms. Lieber's actions.

For the above-stated reasons, the court finds that plaintiff's medical malpractice claims fail to state a plausible claim for relief.

H. Declaratory Judgment

A declaratory judgment ordinarily should not be granted unless the parties' plans of actions are likely to be affected by the declaratory judgment. Jordan v. Sosa, 654 F.3d 1012, 1030

(10th Cir. 2011)(citing and quoting <u>Green v. Branson</u>, 108 F.3d 1296, 1300 (10th Cir. 1997) and <u>Armstrong World Indus., Inc. v. Adams</u>, 961 F.2d 405, 412 (3d Cir. 1992)); see also <u>Barney v. Pulsipher</u>, 143 F.3d 1299, 1306 n.3 (10th Cir. 1998)(a plaintiff cannot maintain a declaratory judgment action unless he or she can establish a good chance of being likewise injured in the future). Plaintiff has made a request for broad declarations that a lengthy list of defendants violated plaintiff's constitutional rights. Doc. No. 1, pp. 17-18.  His requests for declaratory relief are not properly supported or framed to have an impact upon the parties' future actions.

    I. <u>Defendants Dorsey, Robinson and Snyder</u>

    Defendants Dorsey, Robinson and Snyder (and perhaps others) are infrequently mentioned in plaintiff's factual allegations and not mentioned as defendants in plaintiff's recitation of legal claims.[4]  Plaintiff has failed to provide fair notice of his claims against these defendants.

V. <u>Conclusion</u>

    As discussed above, the court finds that plaintiff has failed to state a plausible claim for relief in almost every claim he has brought against almost every defendant named in the complaint.[5]

---

[4] Robinson and Dorsey are mentioned in a lengthy list of defendants against whom plaintiff seeks a declaratory judgment.  Doc. No. 1, p. 17.
[5] Claim # 2 may state a claim against defendant Patterson.  Claim # 6 may state a claim against defendant Monir.

The court shall direct that plaintiff by February 20, 2020 show cause why almost all of plaintiff's claims should not be dismissed as recounted in this order. In the alternative, plaintiff may file an amended complaint by February 20, 2020 which corrects the deficiencies discussed in this order. An amended complaint, supersedes the original complaint and must contain all of the claims upon which plaintiff wishes to proceed. An amended complaint should not refer back to the original complaint.

**IT IS SO ORDERED.**

Dated this 21st day of January, 2020, at Topeka, Kansas.

s/Sam A. Crow_____
Sam A. Crow, U.S. District Senior Judge